IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIANA L. WHITE**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 09-920** |
| | ) | **Judge Arthur J. Schwab** |
| **MICHAEL J. ASTRUE**, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**I.      Introduction**

Plaintiff, Diana White (hereinafter "Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act ("the Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment on the record developed at the administrative proceedings. After careful consideration of the Administrative Law Judge's ("ALJ") Decision, the memoranda of the parties, and the entire record, the Court will grant the Plaintiff's Motion for Summary Judgment and deny Commissioner's Motion for Summary Judgment.

## II.    Procedural History

Plaintiff filed an application for SSI and DIB on October 31, 2006, alleging disability beginning on June 1, 2005. R. at 94-96.  Plaintiff's claim was denied on March 8, 2007 and she thereafter requested a hearing. R. at 81-88  The hearing was held on June 26, 2008 before ALJ Douglas Cohen. R. at 7-53.  Plaintiff, appearing with her disability representative, Brenda White, testified at the hearing along with the vocational expert, Karen Krull. *Id*.

 The ALJ issued a decision on August 14, 2008, finding that Plaintiff was not disabled. R. at 66-80.  The ALJ found that Plaintiff was capable of performing sedentary work with limitations. *Id*.  The ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy such as a surveillance system monitor, packer, and receptionist. *Id*.  On May 22, 2009, the Appeals Council affirmed the ALJ's decision, thus becoming the final decision of the Commissioner. Plaintiff then filed her complaint herein seeking judicial review of the Commissioner's final decision. R. at 1-4.

## III.   Statement of the Case

In the decision dated August 14, 2008, the ALJ made the following specific findings:

1.      The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.

2.      The claimant has not engaged in "substantial gainful activity" since June 1, 2005, the alleged onset date (20 C.F.R. 404.1520 (b), 404.1571 *et seq*).

3.      The claimant has the following severe impairments: small fiber neuropathy (Sjogrens syndrom/lupus), sleep apnea, asthma, major depressive disorder, personality disorder, left knee degenerative joint disease, and cervical disorder (20 C.F.R. 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except she requires a sit/stand option. The claimant can rarely (1-10%) climb (ramps and stairs only), stoop, crouch, crawl, kneel, and balance. She cannot perform repetitive operations of foot/hand controls. The claimant must avoid concentrated exposure to dust, fumes, odors, gases, environment with poor ventilation, temperature extremes, dampness, and humidity. She is limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes. The claimant cannot perform occupations requiring contact with liquids.

6.     The claimant has no past relevant work (20 C.F.R. 404.1565).

7.     The claimant was born on February 15, 1959, and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 C.F.R. 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. 404.1568).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1560(c) and 404.1566).

11.    The claimant has not been under a disability as defined in the Social Security Act, from June 1, 2005, through the date of this decision (20 C.F.R. 404.1520(g)).

R. at 66-80.

## IV.    Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district court to review

---

[1]Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of

transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n. 1 (3d Cir.2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir.1983). The district court's function is to determine whether the record, as a whole, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind

---

the United States for the judicial district in which the plaintiff resides, or has his principal place of business ...
42 U.S.C. § 405(g).

[2]Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

4

might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir.2005); *Ventura*, 55 F.3d at 901 (quoting *Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir.1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir.2002), quoting *Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir.1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.1993), quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n. 7 (3d Cir.2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), that '[t]he

grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' " Id. at 87; parallel and other citations omitted).

<u>Five Step Determination Process</u>

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir.1987); 42 U.S.C. § 423(d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five-step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir .1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied.... In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional

6

capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work....

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step...

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Stunkard*, 841 F.2d at 59; *Kangas,* 823 F.2d at 777 (Steps 1-3); or,

7

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy...." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423(d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir.2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

Vocational Expert-Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir.2002), citing *Podedworny*, 745 F.2d at 218 and *Chrupcala v. Heckler*, 829 F.2d,

1276 (3d Cir.1987) (leading cases on the use of hypothetical questions to VEs)[3]. *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.' ") Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n. 8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir.2002); *see also Id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

---

[3]Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir.1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,' "), *citing* 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971)...."). To that end, the ALJ may not just make conclusory

statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli*, 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir.1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.1979). Similarly,

11

an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir.1999), *relying on Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir.1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself*." *Green*, 749 F.2d at 1070-71 (emphasis added), *quoted in Mason*, 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain

*without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir.1987); *Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D.Pa.1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan*, 970 F.3d 1178, 1184-85 (3d Cir.1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir.2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports ...." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) .... "

13

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

> Moreover, the Commissioner/ALJ:
>
> must "explicitly" weigh all relevant, probative and available evidence.... [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.... The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli*, 247 F.3d at 42-43 (although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit...."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him.... Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.... 'In the absence

14

of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

Medical Source Opinion of "Disability"

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir.1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. § 404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. § 404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to

15

"controlling weight." 20 C.F.R. § 404.1527(b), (d) (2002)[4]. Medical opinions on matters reserved

for the Commissioner are not entitled to "any special significance," although they must always be

considered. 20 C.F.R. § 404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling

("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to

Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI:

Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the

distinction between medical opinions entitled to controlling weight and those reserved to the

Commissioner.

_____

[4]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d) (6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored...." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record ..." 20 C.F.R. § 404.1527(d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of

---

[5]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527(d)(1- 6).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527(f)(2)(I). *See also* SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.")

## V.     **Discussion**

The main contention by the Plaintiff is that the ALJ's decision erroneously determined her residual functional capacity ("RFC"), thereby causing the decision to lack support of substantial evidence in the record.  Specifically, Plaintiff argues that the ALJ erred, as a matter of law, when he improperly rejected Plaintiff's treating psychologist's opinion and failed to explain why certain non-

exertional limitations were not included in her RFC finding.  The Defendant argues only that the ALJ's decision was supported by substantial evidence.

As to Plaintiff's first argument that the ALJ improperly rejected the psychologist's medical opinion, Plaintiff raises three points on why the ALJ should not have rejected said opinion.  The first reason is that the ALJ incorrectly concluded that the psychologist's opinion was inconsistent with his therapy notes, second that the ALJ improperly carried over his credibility determination concerning Plaintiff's physical limitations to her mental health limitations, and third that the ALJ improperly relied on Plaintiff's work with her husband as a basis to deny benefits.

In the ALJ's opinion, he states that Dr. Gallo's psychological evaluation assessment and opinions are "totally inconsistent" with the treatment notes and therefore, the opinions are rejected. R. at 76.

The ALJ cited Dr. Gallo's treatment notes as stating:

On February 19, 2007, the claimant reported to Dr. Gallo that she was going to Dayton for a week with her boyfriend.  However, when questioned about this by the undersigned, the claimant testified she did not go because of a problem with meeting her girlfriend.  On March 1, 2007, Dr. Gallo noted the claimant had just come from teaching and was in a much more positive mood.  A progress note dated July 11, 2007, indicated the claimant's mood was fairly good and she seemed to be oriented with fairly appropriate effect.  In fact, the claimant reported that she had been doing well to Dr. Gallo on July 18, 2007.  Dr. Gallo indicated the claimant mostly talked about work with the band and looking forward to band camp, which was in August.  Furthermore, on August 15, 2007, Dr. Gallo noted the claimant was not depressed and was not experiencing significant anxiety or physical pain.  The claimant reported that she felt a lot better physically when she was doing something she enjoyed doing.  Dr. Gallo opined that is also seemed to apply to her emotional state.  On November 26, 2007, the claimant reported to Dr. Gallo that this past week she had her 25th wedding anniversary and they had a party.  Dr. Gallo indicated on January 14, 2008, that the claimant's mood appeared to be fairly good.  Furthermore, the claimant indicated on February 25, 2008, that she had been practicing the flute on a daily basis and found it helpful to stay calm.  On March 26, 2008, Dr. Gallo noted the claimant continued to babysit for three children.  Also on April 29, 2008, the claimant reported

that she was going to a NASCAR event this weekend with several other people (Exhibit 18F).

R. at 75-76, 371-420.  In evaluations dated October 31, 2006 and November 13, 2006, Dr. Gallo reports that Plaintiff presented with multiple physical complaints as well as depression. R. at 187. She did not present psychotic features although she did have a somewhat inappropriate affect. *Id*. Dr. Gallo administered several tests that indicated that Plaintiff's anxiety was in the severe range, her depression was in the severe range, that she had considerable mental confusion, limited defenses, bizarre ideation and many physical symptoms that may have a psychological aspect that are consistent with psychophysiologic reactions to stress and pain. *Id*.  Dr. Gallo concluded that Plaintiff had major depressive disorder, bipolar disorder, pain disorder and personality disorder and that she had a GAF score of 40[6]. R. at 188.

On October 23, 2007, Dr. Gallo filled out a medical source statement concerning the nature and severity of Plaintiff's mental impairments. R. at 356-59.  In the report, Dr. Gallo found Plaintiff to be markedly limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruption from psychologically based symptoms, the ability to accept instructions and respond appropriated to criticism from supervisors, and the ability too maintain socially appropriate behavior. *Id*.  Dr. Gallo

---

[6]The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-TR)(4th ed. 2000).  A score between 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.  A score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job). *Id*. (emphasis in original).

20

reported that Plaintiff had moderate limitations in the ability to perform activities within a schedule, maintain regular attendance and be punctual, the ability to sustain an ordinary routine without special supervision, the ability to get along with co-workers or peers, and the ability to respond appropriately to changes in the work setting. *Id*.

Dr. Gallo reported in his psychological evaluation of the plaintiff dated October 20, 2008, that Plaintiff's affect was frequently inappropriate and child-like in many respects, and had periods of paranoid ideation. R. at 422.  He stated her abstract thinking ability is currently below what would be expected in view of her educational history. *Id*.  Plaintiff was given several diagnostic tests by Dr. Gallo that indicated that Plaintiff suffered with severe pain that she found distressing, had symptoms of depression that placed her within the severe range, had severe anxiety, had mental confusion, limited psychological defenses and bizarre ideation. R. at 423-24.  Dr. Gallo concluded that Plaintiff had periods of major depression with bipolar disorder and a chronic personality disorder and again assessed her GAF score to be 40.  R. at 424-25.

As stated above, "an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgment, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citations omitted).  The Court of Appeals has warned that an ALJ cannot disregard a "medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility." *Id*. at 318 (quoting *Kent*, 710 F.2d at 115).  In this case the ALJ interpreted Dr. Gallo's treatment notes as being inconsistent with Dr. Gallo's assessment of Plaintiff having severe limitations due to major depressive disorder, bipolar disorder and personality disorder.  The ALJ's speculative interpretation of Dr. Gallo's treatment notes as

21

being medically inconsistent with his medical conclusions is an improper decision of the ALJ. The United States Court of Appeals for the Third Circuit has recently reiterated that "a doctor's observation that a patient is 'stable and well controlled with medication' during treatment does not [necessarily] support the medical conclusion that [the patient] can return to work." *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 356 (3d Cir. 2008)(quoting *Morales*, 225 F.3d at 319). Furthermore, the Court of Appeals for the Third Circuit stated that medical assessments are to be distinguished where one may reflect a condition at the time of examination and the other reflects the assessment of the ability to function in a work setting, and such differing assessments are not to be automatically assumed to be contradictory. *Brownawell*, 554 F.3d at 356. "[T]his Court has admonished ALJs who have used such reasoning, noting the distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion of the claimant's ability to work." *Id*. (citation omitted). Indeed, Dr. Gallo highlighted the distinction between his progress notes from his functional assessment in his post-decision letter. R. at 420. Since such invalid reasoning was used by the ALJ in this case, the rejection of Dr. Gallo's opinion on the basis that it was inconsistent with medical evidence is not supported by substantial evidence in the record.

The Defendant argues that the ALJ's interpretation was proper because Dr. Gallo's testing revealed that he had to rely upon Plaintiff's subjective statements and did not have clinical observations that entitled his findings any weight. This argument, however, ignores the fact that Dr. Gallo's psychological evaluations of the Plaintiff did include clinical observations and standardized diagnostic testing. R. at 186-88, 421-25. As a result, Defendant's argument is without merit.

Plaintiff's second point for why Dr. Gallo's opinion should have been considered is that ALJ should not have carried over his credibility determinations of Plaintiff's physical limitations as a

basis to reject Dr. Gallo's opinion. The ALJ stated "that Dr. Gallo based his opinions on the claimant's subjective complaints and she is not credible." R. at 77.  The principle remains, however, that "the ALJ should not substitute his lay opinion for the medical opinion of experts [and that principle] is especially profound in a case involving mental disability.  This Court has said before that an ALJ's personal observations of the claimant 'carry little weight in cases . . . involving medically substantiated psychiatric disability.'" *Morales*, 225 F.3d at 319 (quoting *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir.1984 )).  Here, the ALJ simply replaced Dr. Gallo's medical opinion as to the severity of Plaintiff's mental limitations with his own opinion based on his finding that the Plaintiff was not credible, even though there was no medical evidence in the record contradicting Dr. Gallo's opinion.  As such, the ALJ's determination had the effect of replacing Dr. Gallo's medical opinion with the ALJ's lay opinion.  The case law and SSA regulations are quite clear that such a determination is improper and thus it lacks the support of substantial evidence in the record.

The final issue raised concerning Dr. Gallo's medical opinion is that the ALJ should not have relied on Plaintiff's work with her husband as a basis to reject Dr. Gallo's opinion.  The ALJ did not only use the fact the Plaintiff worked as an assistant to her husband, but also that she went to a NASCAR event and a trip to Michigan, and had a 25th wedding anniversary party as activities that contradicted Dr. Gallo's medical opinion of Plaintiff's limitations. R. at 76-77.  The Court of Appeals for the Third Circuit has held that "sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity." *Fargnoli*, 247 F.3d at 40 n.5 (citing *Jensurum v. Secretary of U.S. Dept. of Health & Human Services*, 48 F.3d 114, 119 (3d Cir. 1995)).  In *Jensurum*, the Court of Appeals for the Third Circuit found that a trip to Europe could not be used

23

as a basis to deny the claimant benefits. *Id.*  In this case, the ALJ would similarly have to speculate that the activities cited above would have been contradictory to Dr. Gallo's medical opinion.  As discussed above, since there is no medical evidence in the record that contradicts Dr. Gallo's medical opinion, it was improper for the ALJ to reject the opinion on the basis of the "sporadic and transitory activities" of the Plaintiff.  As a result, the ALJ should not have rejected Dr. Gallo's opinion when determining Plaintiff's RFC.

Since Plaintiff's RFC was erroneously determined as discussed above, there is no need to decide Plaintiff's second issue that her RFC lacked a discussion of all her mental limitations, as the RFC will have to reconsidered as a whole on remand.

**VI.      Conclusion**

Because the treating physician's medical opinion was erroneously rejected, the ALJ's decision is not supported by substantial evidence.  The case must be remanded and reconsidered to properly determine Plaintiff's RFC and whether in fact, the Plaintiff has an impairment which meets or medically equals the Listings. Plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded for reconsideration consistent with this opinion.

An appropriate order will follow.

 *s/ Arthur J. Schwab*
 Arthur J. Schwab
 United States District Judge


Dated:        December 9, 2009.
cc/ecf:        All counsel of record.

24